IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CATALINA TARTAK TARTAK,<br><br>     Plaintiff,<br><br>     v.<br><br>PEDRO J. TARTAK DEL PALACIO, *et al.*,<br><br>     Defendants. | Civil No. 09-1730 (DRD/BJM) |

## REPORT AND RECOMMENDATION

Plaintiff Catalina Tartak Tartak ("Catalina" or "plaintiff") brings this action in diversity against Pedro J. Tartak del Palacio ("P.J. Tartak"), Maria Cristina Tartak del Palacio ("M.C. Tartak"), Dalel Tartak del Palacio ("D. Tartak"), and Amparo del Palacio ("del Palacio") (collectively, "defendants"), seeking an accounting of the estate of the late Rafael Tartak Yapur ("R. Tartak") and related relief under Puerto Rico law. (Docket No. 1). Defendants filed a motion to dismiss (Docket No. 10), plaintiff opposed (Docket No. 14), defendants replied (Docket No. 20), and plaintiff filed a sur-reply. (Docket No. 25). The presiding district judge referred the motion to dismiss to me for a report and recommendation. (Docket No. 31). For the reasons that follow, I recommend that defendants' motion to dismiss be granted in part and denied in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

R. Tartak died without spouse or issue on July 24, 2004. He had been predeceased by his parents and three of his four siblings: Ramon and David, who died childless, and Dalel Tartak Yapur ("Tartak Yapur"). His sister Damia survived him. (Docket No. 1, ¶¶ 7-10). Tartak Yapur, who died on February 28, 1987, had two children with her husband Pedro Tartak Badui ("Tartak Badui"), who died testate on May 3, 1994: plaintiff and her brother, the late Carlos Tartak Tartak ("Carlos"), who is survived by his wife, defendant del Palacio, and their children, defendants P.J. Tartak, D. Tartak, and M.C. Tartak. (Id., ¶¶ 2-5, 11, 34; see also Docket Nos. 10-3, p. 1-15; 23-2, p. 4-29).

**Tartak Tartak v. Tartak del Palacio, et al.**  Page 2
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

At the time of his death, R. Tartak owned at least twelve real properties, valuable securities, and substantial amounts of cash. (Docket No. 1, ¶ 13). All of the estate properties are located in Puerto Rico. (Docket No. 10, p. 3). R. Tartak and Tartak Badui jointly owned in equal parts two pieces of real property (the "jointly-owned properties"), which host businesses belonging to third parties that pay rent on the properties. In a transfer that plaintiff contests as either a sham assignment or, alternatively, a gift, Tartak Badui registered his one-half share of the jointly-owned properties in the name of his son Carlos (plaintiff's brother), though he allegedly continued in effect to own his share. Plaintiff has not received any income from the rents defendants receive on the two jointly-owned properties, nor has she received any information about or accounting of that income. (Docket No. 1, ¶¶ 31-32, 37-38). Plaintiff alleges, without any evidence in support, that defendants have admitted that one-half of both properties lawfully belongs to the Tartak Badui estate. (Id., ¶ 33). Plaintiff alleges entitlement to one-half of Tartak Badui's share in the jointly-owned properties, i.e., a one-quarter share in those properties. Alternatively, plaintiff alleges that if the transfer to Carlos was a gift, it must be calculated as part of the Tartak Badui estate. (Id., ¶¶ 35-36).

On October 28, 2004, P.J. Tartak filed an ex parte petition in the Court of First Instance of Puerto Rico, San Juan Part, presenting a copy of a holographic will allegedly signed by R. Tartak on June 15, 2004. The holographic will named Damia and P.J. Tartak as beneficiaries and granted a residence and $200,000 to Damia and the remainder of the estate to P.J. Tartak. (Id., ¶¶ 11-12). Plaintiff alleges that the holographic will is invalid and thus R. Tartak died intestate, such that she is entitled to one-quarter of his estate under Puerto Rico intestate succession law. (Id., ¶¶ 21-25).

On April 9, 2005, Damia, who was allegedly in dire financial straits, assigned all her rights and interest in the R. Tartak estate to P.J. Tartak. In the assignment, she also agreed not to contest the holographic will. In exchange, she received $500,000, a residence, an automobile, monthly pensions of $1,500 and $866 for her lifetime, and additional sums for medical insurance premiums. P.J. Tartak also agreed to pay Damia $38,217.02 "in the concept of redeemed Certificates of Deposit

**Tartak Tartak v. Tartak del Palacio, et al.**  Page 3
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

in the name of Dalel Tartak Yapur." (Id., ¶¶ 14a, 14b).[1] Plaintiff alleges that she is entitled to one-half of Tartak Yapur's estate, including the $38,217.02 paid to Damia. (Id., ¶ 26).

Shortly thereafter, on May 19, 2005,[2] plaintiff appeared in the ex parte action, challenging the signature on the holographic will and requesting production of the original of the document for expert analysis. P.J. Tartak then moved for voluntary dismissal of the action, which was entered on September 14, 2005. The following day, he filed suit against plaintiff in the same court, seeking validation of the holographic will. Plaintiff answered the complaint and requested production of the original of the document along with samples of R. Tartak's handwriting and signature in order to ascertain the holographic will's validity. On September 20, 2006, P.J. Tartak requested voluntary dismissal of the action, which was granted one week later. (Id., ¶¶ 15-20).

On April 26, 2007, in the Puerto Rico Court of First Instance, Carolina part, defendants in the instant case sued plaintiff and her husband, Mason Michael, Jr. ("Michael"), in a proceeding concerning the Tartak Badui estate, Case No. FPE 07-0518(407) (the "Carolina case"). Defendants (plaintiffs in that case) accused Michael and Catalina, the executrix at the time, of fraud, lack of account rendering, malfeasance, breach of fiduciary duties, conversion, negligence, self-dealing, and diversion in the execution and administration of the estate over a period of more than fifteen years. (Docket No. 10, p. 1-2). On June 12, 2009, in the Puerto Rico Court of First Instance, San Juan part, P.J. Tartak filed a proceeding concerning the R. Tartak estate, Case No. KJV 09-1324(905) (the "San Juan case"), seeking the protocolization and validation of the holographic will under Puerto Rico probate law. As of the filing of the motion to dismiss, both proceedings were still ongoing, and trial was set for May 25, 2010 in the San Juan case. (Id., p. 1-3; Docket No. 29).

Plaintiff filed the complaint in the instant case on July 30, 2009, alleging that P.J. Tartak

---

[1] Because the complaint contains two sequential paragraphs both numbered 14, the first paragraph shall be referred to herein as "14a" and the second as "14b." (Docket No. 1, p. 3-4).

[2] While the year is given as 2004 in the complaint, it is clear from context that the correct year is 2005. (Docket No. 1, ¶ 15).

improperly and fraudulently took over the assets of the R. Tartak estate and that the three other defendants conspired and worked with him to deprive plaintiff of her alleged rights in the R. Tartak and Tartak Badui estates. The complaint, which does not cite any provisions of the Puerto Rico Civil Code, alleges fraud, bad faith, and unjust enrichment and seeks economic and emotional damages as well as equitable relief. Specifically, plaintiff's six requests for relief, styled as causes of action, ask that the court (1) order P.J. Tartak to provide a complete accounting of the R. Tartak estate; (2) order the restitution of all income, monies, properties, and securities to the R. Tartak estate, with interest; (3) appoint a receiver to take possession of, administer, and distribute the R. Tartak estate; (4) grant plaintiff economic and emotional damages for P.J. Tartak's allegedly negligent and fraudulent conduct; and order defendants to (5) restore title to one-half of the jointly-owned properties to the Tartak Badui estate and (6) provide an accounting of the income and benefits derived from the jointly-owned properties and pay plaintiff 25 percent of such income, plus interest. (Id., ¶¶ 3-5, 21-30, 32-36, 38-58, p. 9-10).

## II. DISCUSSION

### A. Rule 12(b)(1) Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1) ("12(b)(1)"), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "As courts of limited jurisdiction, federal courts have the duty to construe their jurisdictional grants narrowly." Fina Air, Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008) (citing Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998)). Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir.), *cert. denied*, 515 U.S. 1144 (1995); Droz-Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217 (D.P.R. 2003).

Challenges to subject matter jurisdiction through a Rule 12(b)(1) motion may constitute either a facial or a factual challenge. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001); Mercado-Arocho v. United States, 455 F. Supp. 2d 15, 18 (D.P.R. 2006); Rivera de León v.

Maxon Eng'g Servs., Inc., 283 F. Supp. 2d 550, 554 (D.P.R. 2003). To decide whether a 12(b)(1) motion is a facial or factual challenge, a court must determine whether the motion disputes the complaint's allegations regarding subject matter jurisdiction. Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162 n.8 (1st Cir. 2007). If the 12(b)(1) motion does not dispute subject matter allegations, then it challenges only the facial sufficiency of the complaint. Id. If the 12(b)(1) motion disputes the subject matter allegations, then it challenges the factual basis for subject matter jurisdiction. Id.

Under a facial challenge, the moving party challenges jurisdiction based on the allegations in the complaint. See Valentin, 254 F.3d at 363; Mercado-Arocho, 455 F. Supp. 2d at 18; Rivera de León, 283 F. Supp. 2d at 554. Thus, "the court must consider all the allegations in the complaint as true, and will not look beyond the face of the complaint to determine jurisdiction." Mercado-Arocho, 455 F. Supp. 2d at 18. A facial attack only requires a court to examine the complaint and determine whether the plaintiff "'has sufficiently alleged a basis of subject matter jurisdiction.'" Torres-Negrón, 504 F.3d at 162 (quoting Scarfo v. Ginsburg, 175 F.3d 957, 960 (11th Cir. 1999)); see, e.g., Fina Air Inc., 555 F. Supp. 2d at 325-28 (examining a facial attack and applying the standard articulated in Torres-Negrón).

In a factual challenge, the moving party "challeng[es] the actual existence of subject matter jurisdiction" where, "either in his motion or in any supporting materials, [he] denies or controverts the pleader's allegations of jurisdiction." 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1363, at 653-54 (1969) (cited in Torres-Negrón, 504 F.3d at 162 n.8). Under a factual challenge, "the allegations have no presumptive truthfulness, and . . . the court has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Mercado-Arocho, 455 F. Supp. 2d at 18 (citations omitted). The analysis changes depending on whether the challenged facts would also decide issues relating to the merits of the case. Torres-Negrón, 504 F.3d at 163. If the challenged facts do involve the merits of the case, the court must use a summary judgment standard and dismiss "'only if the material jurisdictional facts are not

**Tartak Tartak v. Tartak del Palacio, et al.**  Page 6
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

in dispute and the moving party is entitled to prevail as a matter of law.'" Id. (quoting Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)). If the challenged facts do not involve the merits, then the court is free to consider evidence and decide the question of its subject matter jurisdiction over the case. Id.

**B.     Analysis**

Defendants argue that the court lacks jurisdiction over plaintiff's claims, and that in the alternative, the court should abstain from adjudicating the case. (Docket No. 10). Defendants challenge the factual allegations in the complaint as to subject matter jurisdiction, noting that the complaint fails to mention the two current proceedings in the Commonwealth courts. (See id., p. 1-7). Thus the court may look beyond the face of the complaint and has discretion to allow affidavits and documents to resolve disputed jurisdictional facts in order to determine the existence of subject matter jurisdiction. Mercado-Arocho, 455 F. Supp. 2d at 18 (citations omitted). From the complaint, pleadings, and other materials submitted by defendants, it appears that only one cause of action is sufficiently related to the administration of an estate to fall within the probate exception to federal diversity jurisdiction. However, I conclude that the parallel litigation ongoing in the Commonwealth courts merits federal abstention from several of the claims. I will address each issue in turn.

    **1.     Probate Exception to Federal Diversity Jurisdiction**

First, defendants argue that the complaint should be dismissed because this case falls under an exception to federal diversity jurisdiction for probate matters. Under this judge-made doctrine, federal courts have no authority to "interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." Markham v. Allen, 326 U.S. 490, 494 (1946). Yet "stating the probate exception has proven easier than applying it." Umsted v. Umsted, 446 F.3d 17, 20 n.2 (1st Cir. 2006). The Supreme Court recently emphasized that the scope of the exception is "distinctly limited." Marshall v. Marshall, 547 U.S. 293, 296 (2006). The Marshall Court clarified that "the probate exception reserves to state probate

courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Id. at 311-12. However, the exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Id. at 312. "'[W]here exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction.'" Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 24 (1st Cir. 2010) (quoting Lefkowitz v. Bank of N.Y., 528 F.3d 102, 106 (2d Cir. 2007)).

### a.  *Claims One Through Three: R. Tartak Estate*

Plaintiff's first cause of action seeks an accounting of the R. Tartak estate; the second seeks restitution of all income, monies, properties and securities to the estate; the third requests appointment of a receiver to take over, administer, and distribute the estate. (Docket No 1, ¶¶ 39-48). Defendants argue that these claims are "purely probate matter[s]." (Docket No. 10, p. 6). The court disagrees, except with respect to the third cause of action. That claim falls directly within the scope of the probate exception, which "reserves to state probate courts . . . the administration of a decedent's estate." Marshall, 547 U.S. at 311.

The second claim, however, does not fall under the exception. The assets which plaintiff seeks to have restored to the estate are not "yet in the custody of a Puerto Rico probate court. Indeed, the very relief sought here is enlargement of [R. Tartak's] estate through assets not currently within it." Rodriguez-Pagan, 597 F.3d at 24. By contrast with the third cause of action, "[w]hile divvying up an estate falls squarely within the probate exception, merely increasing it does not." Id. (citing Gustafson v. zumBrunnen, 546 F.3d 398, 400 (7th Cir. 2008) (finding that the probate exception did not apply because "the judgment sought would just add assets to the decedent's estate" rather than "reallocat[ing] the estate's assets among contending claimants or otherwise interfer[ing] with the probate court's control over and administration of the estate")).

**Tartak Tartak v. Tartak del Palacio, et al.**                                                                 Page 8
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

     As to the first claim, after Marshall, a request for an accounting of an estate does not fall within the probate exception. See Garcia v. Garcia Oronce, 2009 WL 483127, at *4 (D.P.R. Feb. 24, 2009) (rejecting argument that probate exception applies to request for equitable relief including accounting of the property) (citing Marshall, 547 U.S. at 311-12); Marcus v. Quattrocchi, 2010 WL 2228489, at *8 (S.D.N.Y. May 27, 2010) ("Plaintiffs' request for an 'accounting' does not magically transform their basic tort claims into allegations asking the Court to exercise jurisdiction over a *res* under state court jurisdiction."). In short, of the three claims related to the R. Tartak estate, only the third must be dismissed for lack of subject matter jurisdiction due to the probate exception.

                              **b.**     *Claim Four: Negligence, Fraud, and Unjust Enrichment*

     Plaintiff's fourth cause of action seeks emotional and economic damages for P.J. Tartak's conduct, which she alleges constitutes negligence, unjust enrichment, and fraud. (Docket No. 1, ¶¶ 49-52). Defendants argue that this claim "seeks damages in the event the probate court invalidates the will" such that plaintiff will not be entitled to any part of the estate, making the claim "obviously a probate matter." (Docket No. 10, p. 6). The court disagrees with defendants' characterization. The Marshall Court, underscoring the limited scope of the probate exception, rejected the exception's application to a claim for tortious interference, "a widely recognized tort" pursuant to which the petitioner "seeks an *in personam* judgment . . . , not the probate or annulment of a will" or "to reach a *res* in the custody of a state court." Marshall, 547 U.S. at 312 (citations and quotations omitted). See also Wilde v. Wilde, 576 F. Supp. 2d 595, 604 (S.D.N.Y. 2008) ("An award of restitution for unjust enrichment is a money judgment *in personam*, not linked to any particular asset.") (citation omitted). This is just what plaintiff seeks in the fourth cause of action. Furthermore, contrary to defendants' reading, the claim is not wholly contingent upon the outcome of the San Juan case. While plaintiff's economic damages may depend in part on the validation of the will, she also seeks compensation for emotional damages attributable to the acts P.J. Tartak allegedly already committed, as detailed in the complaint. In short, the probate exception does not apply to this claim.

### c. *Claims Five and Six: Tartak Badui Estate*

In opposing the motion to dismiss, plaintiff acknowledges that a case concerning the Tartak Badui estate is currently before the Commonwealth courts, but insists that "[s]ince we are talking of two entirely distinct estates, the issues of the present complaint are not being litigated therein." (Docket No. 14, p. 3) (emphasis in original). The complaint in that case concerns Tartak Badui's will, whose validity apparently is not contested. Plaintiffs in that case (defendants here) seek, among other relief, revocation of all letters testamentary, an accounting of the estate, the freezing of estate assets, restitution to the estate of all moneys and valuables, partition and dissolution of the "community inherited property,"[3] removal of Catalina as executrix, and appointment of an administrator to take possession of and distribute the estate. (Docket Nos. 10-3, p. 1-15; 23-2, p. 4-29). Thus it appears from that complaint that, as of the filing of the instant motion to dismiss, the Tartak Badui estate is still open (making it a "community of property" in local terminology), and the Commonwealth court has exercised jurisdiction over the assets thereof.

The fifth and sixth causes of action in the instant complaint request that the court order transfer of title to one-half of the jointly-owned properties to the Tartak Badui estate, give plaintiff an accounting of the properties' income, and pay her a quarter of that income. (Docket No. 1, ¶¶ 53-58). Tartak Badui assigned plaintiff's brother Carlos his one-half share in the jointly-owned properties, which apparently passed to defendants, Carlos's wife and children, upon Carlos's death. Plaintiff argues that the share must be returned to the Tartak Badui estate, either because the assignment was invalid or, alternatively, because it was a gift that must be accounted for in disposing of the estate. Plaintiff's own causes of action thus undermine her argument that the present complaint does not implicate the Tartak Badui estate. However, the court agrees that claims five and six do not appear to overlap with any claims in the case before the Commonwealth court.

---

[3] In Puerto Rico, the decedent's as-yet undivided estate is known as a community of property. Rodriguez-Pagan, 597 F.3d at 25-26 (citation omitted).

**Tartak Tartak v. Tartak del Palacio, et al.**                                                        Page 10
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

While plaintiff has not addressed the probate exception's applicability to claims five and six in particular, I find that the exception is unavailable as to those claims. Plaintiff's allegations represent that the share in the jointly-owned properties is not currently part of the Tartak Badui estate. Defendants argue that the two jointly-owned properties are presently under the Carolina court's control, but have provided no evidence to support this allegation save the complaint in that case, which does not prove that the jointly-owned properties or any share therein are in the custody of the Commonwealth court.[4] (Docket No. 20, p. 4-5). Therefore, since plaintiff seeks to enlarge the estate by adding to it an asset which is not in the local court's custody, the claim falls outside the scope of the probate exception. Rodriguez-Pagan, 597 F.3d at 24; Gustafson, 546 F.3d at 400 (probate exception inapplicable because "the judgment sought would just add assets to the decedent's estate"). The sixth cause of action, seeking an accounting of the income from the share, comes no closer to falling within the probate exception than the fifth. See Garcia, 2009 WL 483127, at *4 (rejecting probate exception's applicability post-Marshall to request for accounting). As the probate exception does not apply to these two claims, dismissal is not warranted on that ground.[5]

   **2.    Colorado River Abstention**

In the alternative, defendants argue that the court should abstain from adjudicating the instant case under the doctrine established in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Generally, the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," but this obligation is not unlimited. Id. at 817. While the

---

   [4] That complaint alleges that the jointly-owned properties "were private property of doctor Carlos Tartak Tartak . . . which he refused in life and in all his right [*sic*] to become part of the [Tartak Badui] estate." (Docket No. 23-2, p. 14-15).

   [5] It is worth mentioning one last argument plaintiff makes against the applicability of the probate exception to the instant case. (Docket No. 14, p. 10). Plaintiff "has also tried to imply that the probate exception to diversity jurisdiction is limited only to states which have specialized courts with exclusive jurisdiction over probate matters and that the exception does not apply to Puerto Rico. This is not correct." Junco Mulet v. Junco de la Fuente, 228 F. Supp. 2d 12, 17-18 (D.P.R. 2002) (citing Dragan v. Miller, 679 F.2d 712, 716-17 (7th Cir. 1982)).

**Tartak Tartak v. Tartak del Palacio, et al.**                                                                    Page 11
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

presence of parallel litigation in state court will not in and of itself merit abstention, the Colorado River Court held that in special cases, the pendency of a similar action in state court may merit federal abstention based on "considerations of wise judicial administration" that counsel against duplicative lawsuits. Rodriguez-Pagan, 597 F.3d at 27 (citations and quotations omitted).

Colorado River abstention is to be approached with the utmost caution; "[o]nly the clearest of justifications" will warrant dismissal. Id. (citing Colorado River, 424 U.S. at 819). To determine whether abstention is appropriate, the court applies an "exceptional-circumstances test" whose non-exclusive list of factors includes (1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction. Id. at 27-28 (citations omitted). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Colorado River, 424 U.S. at 818-19. Furthermore, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Rodríguez-Pagán, 597 F.3d at 28 (citation and quotation omitted). Applying the above factors to the instant case, the court finds that, on balance, abstention is warranted for plaintiff's first three causes of action, but not for the other three.

As to all causes of action in plaintiff's complaint, certain factors are neutral: the federal and Puerto Rico forums are equally convenient (second factor), the Puerto Rico forum is well-equipped to protect the parties' interests (sixth factor), the federal action is brought in diversity and so is not vexatious or contrived (seventh factor), and removal jurisdiction is irrelevant (eighth factor). See Rodriguez-Pagan, 597 F.3d at 28 (citation omitted).

**Tartak Tartak v. Tartak del Palacio, et al.**                                                           Page 12
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

     Regarding the fifth factor, "the dispute here turn[s] entirely on issues of Puerto Rico law," which weighs in favor of abstention respecting both the Carolina and San Juan cases. Id. at 30 (citing Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475, 477 (1st Cir. 1985) (finding it significant that "no federal issues are raised . . . and no federal interest would be served by retaining jurisdiction over the case")). Furthermore, if, as defendants claim, it is still an unsettled question of Puerto Rico law whether a court may validate a copy of a holographic will where the original disappeared or is lost (Docket No. 10, p. 11), abstention may be even more appropriate with regard to the San Juan case, as the holographic will is entangled in the merits of plaintiff's claims regarding the R. Tartak estate.[6] Rodriguez-Pagan, 597 F.3d at 30 (citing Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc., 48 F.3d 46, 52 (1st Cir. 1995) (abstention preferable where "parties' claims present particularly novel, unusual or difficult questions of legal interpretation"); further citation omitted).

     The first factor is irrelevant to plaintiff's claim for emotional and economic damages, as there is no *res* involved. Otherwise, the first factor disfavors abstention. Plaintiff asks the court to restore defendants' one-half share in the jointly-owned properties back to the Tartak Badui estate. As noted, defendants contend that the properties are under the control of the Carolina court (Docket No. 20, p. 4-5), but their only evidence is the complaint in the Carolina case, which expressly alleges that the share is not part of the Tartak Badui estate (Docket No. 23-2, p. 14-15) and which in any event does not prove that the Carolina court has exercised *in rem* jurisdiction over the share. Regarding the R. Tartak estate, the complaint requests that this court appoint a receiver to take possession of, administer, and distribute the estate. Plaintiff maintains that "[i]t is an undisputed fact that no Commonwealth court has taken custody of the [R. Tartak] estate assets" and notes that the

---

    [6] Plaintiff counters that the question "is unsettled only in defendants' minds" and cites the Civil Code provisions pertaining to holographic wills, but cites no legal authority directly addressing the issue. (Docket No. 14, p. 12). Neither, for that matter, do defendants cite any cases from the Commonwealth courts addressing the issue. (Docket No. 10, p. 11; Docket No. 20, p. 12-13).

holographic will has not yet been validated or registered. (Docket No. 14, p. 6, 8; see also Docket No. 25, p. 2). Defendants insist that "the Puerto Rico First Instance Court has assumed jurisdiction over the estate[] of Rafael Tartak Yapur." (Docket No. 20, p. 12). However, as above, defendants' only evidence in support of these allegations is the petition in the San Juan case, which proves nothing about the court's subsequent assumption of jurisdiction over the R. Tartak estate's assets. Therefore, I find that the first Colorado River factor mitigates against abstention respecting the San Juan case.

The fourth factor, the order in which the courts obtained jurisdiction, favors abstention. While both the Carolina and San Juan proceedings were filed before the instant case, "the relative progress of the suits is more important than the strict order in which the courts obtained jurisdiction." Gonzalez v. Cruz, 926 F.2d 1, 4 (1st Cir. 1991). Rather, this factor "favors the case that is the more advanced at the time the Colorado River balancing is being done." The court considers which case is "more advanced" in a "pragmatic, flexible manner, with a view to the realities of the case at hand." Elmendorf, 48 F.3d at 52 (citation and quotation omitted).

An absence of any federal proceedings beyond a motion to dismiss favors the surrender of jurisdiction. Colorado River, 424 U.S. at 820. Such is precisely the situation here. Regarding plaintiff's economic and emotional damages claim, no such claim exists in the Commonwealth cases, so abstention is disfavored. Otherwise, the analysis points the other way. Defendants contend that the Carolina case is in an "advanced stage," as it had been in active litigation with over two years of discovery development at the time the motion to dismiss was filed.[7] (Docket Nos. 10, p. 9; 20, p. 12). While Carlos's share of the jointly-owned properties is not apparently part of the Tartak Badui estate, that does not render this factor irrelevant, as years' worth of discovery regarding an estate that has been open ostensibly since Tartak Badui's death in 1994 puts the Carolina court in

---

[7] Unfortunately, the parties have not submitted the case docket, which would give the court an up-to-date snapshot of the proceeding.

**Tartak Tartak v. Tartak del Palacio, et al.**                                                                Page 14
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

a better position to understand the status of the various properties within the ambit of the parties' dispute. As to the San Juan case, according to plaintiff, a hearing on the merits, originally scheduled for November 12, 2009, was continued to December 17, 2009. (Docket No. 25, p. 3). According to defendants, a hearing took place that day, testimony was given, depositions were set, and the trial setting was continued to May 25, 2010. (Docket No. 29). The parties have not provided any further updates. Thus the San Juan case has reached a much more advanced stage than the instant case, which has not progressed beyond the motion to dismiss phase. As the holographic will is critical to the instant case, abstention is preferable.

The third factor, avoidance of piecemeal litigation, weighs strongly in favor of abstention on the three claims relating to the R. Tartak estate, but against abstention regarding the other claims. The "piecemeal litigation" to be avoided must refer, not to garden-variety duplication of effort between two courts, but to some factor "that places the case beyond the pale of duplicative proceedings." Rodriguez-Pagan, 597 F.3d at 29 (citations omitted). "Dismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues." Id. (citation omitted). "Rather, concerns about piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora, and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other." Id. (citation omitted). For example, abstention has been favored in order to avoid piecemeal litigation where a case involved numerous unresolved issues of Puerto Rico law. See Rivera-Feliciano v. Acevedo-Vila, 438 F.3d 50, 50 (1st Cir. 2006).

Here, plaintiff's first three causes of action turn on whether or not R. Tartak's alleged holographic will can be validated under Puerto Rico law. Plaintiff's case is predicated on her theory that the will is not valid and R. Tartak died intestate. The first cause of action seeks an accounting of the estate, but if the will is valid, plaintiff would have no rights in the R. Tartak estate and thus would be entitled to no such accounting. Likewise, the second cause of action seeks restitution of

assets to the R. Tartak estate, but this relief is unavailable if the holographic will is valid. Plaintiff's third claim asks that a receiver be appointed to take over administration and distribution of the estate. If this court proceeds under intestacy law but the Commonwealth court validates the holographic will, the practical implications would involve divergent and conflicting consequences as between the two cases, since the estate would require a different distribution of assets to different heirs[8] depending on whether R. Tartak is adjudged to have died testate or intestate. Moreover, defendants claim (though without citation to any legal authority) that the validity of a copy of a holographic will whose original has been lost is a novel question of Puerto Rico law. These circumstances merit dismissing plaintiff's first three causes of action in favor of the San Juan case.

However, the third factor does not warrant abstention regarding the last three causes of action in the complaint. As to the fifth and sixth claims, the Tartak Badui estate does not currently include defendants' share of the jointly-owned properties, so there is no risk of inconsistent dispositions of property or of inconsistent orders regarding an accounting of the income from that share. Plaintiff's claim for emotional and economic damages presents a closer question. Defendants argue that plaintiff *could* bring the same as a counterclaim in the San Juan case at some point in the future (Docket Nos. 10, p. 6; 20, p. 12), but there is no evidence that she has done so, giving this court nothing to which to defer. While, as mentioned, plaintiff's alleged economic damages may tie into the validity of the holographic will, it is unclear from the complaint exactly which of plaintiff's acts allegedly caused plaintiff economic damages, and there is nothing remarkable about plaintiff's emotional damages claim. Thus it does not appear that any putative damages counterclaim in the San Juan case would rise to the "exceptional" level that "piecemeal litigation" connotes. See Rodriguez-Pagan, 597 F.3d at 29 (citations and quotations omitted).

Applying the Colorado River factors, I find that while certain factors are neutral to the

---

[8] Including Damia, who, despite her unique situation in the circumstances here, is not a party to either action. See Rodriguez-Pagan, 597 F.3d at 24-30 (baffling question of Puerto Rico law as it relates to Rule 19 joinder requirements mercifully obviated by applicability of Colorado River abstention).

**Tartak Tartak v. Tartak del Palacio, et al.**  Page 16
Civil No. 09-1730 (DRD/BJM)
REPORT AND RECOMMENDATION

inquiry, the balance strongly favors abstention regarding plaintiff's first three claims and so dismissal is warranted. However, careful balancing of the factors does not call for such extraordinary action regarding the complaint's fourth, fifth, and sixth claims, particularly in view of the heavy bias in favor of the exercise of federal jurisdiction. See Rodriguez-Pagan, 597 F.3d at 28 (citation omitted).

## CONCLUSION

For the reasons stated above, I recommend that defendants' motion to dismiss be **GRANTED** in part and **DENIED** in part. Namely, I recommend that the court **DENY** the motion as to plaintiff's fourth, fifth, and sixth causes of action, **GRANT** the motion as to plaintiff's first, second, and third causes of action, and **DISMISS** those claims without prejudice.

The parties have fourteen (14) days to file any objections to this report and recommendation. Local R. 72(d); see also 28 U.S.C. § 636(b)(1). The court **has set aside the three (3) days term provided by Local Rule 5.1.** (Docket No. 31). Failure to file objections within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 9th day of August, 2010.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge