IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| CATALINA TARTAK TARTAK, | * | CIVIL NO. 09-1730(DRD) |
| Plaintiff, | * | |
| v. | * | |
| PEDRO J. TARTAK DEL PALACIO | * | |
| ET AL., | * | |
| Defendants. | * | |

_____

AMENDED OPINION AND ORDER

Pending before the court is a Motion to Dismiss filed by defendants Pedro J. Tartak et al. Under Fed. R. Civ. P. 12(b)(1) challenging subject matter jurisdiction over the instant diversity jurisdiction complaint under the Probate exception to Federal Diversity jurisdiction based on the recent Supreme Court case of Marshall v. Marshall, 547 U.S. 293 (2006) and the recent interpretation of the Probate exception by the Court of Appeals in the case of Jiménez v. Rodríguez-Pagán, 597 F. 3d 18 (1st Cir. 2010). (Docket 10.)

The challenge to jurisdiction is also based on the discretionary abstention exception under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) and Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983) ("Colorado River abstention") relating to abstention grounded on prior existing state parallel litigation on "considerations of wise judicial administration, given regards to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817.

The litigation involves the estate of Rafael Tartak Yapur ("the Estate of R. Tartak"). Plaintiff, Catalina Tartak Tartak ("Catalina Tartak") is an apparent potential heir of her uncle, R.

1

Tartak. She is a citizen of New York. Co-defendant Pedro José Tartak del Palacio ("Pedro J.") is one of plaintiff's nephews who allegedly "improperly or fraudulently" illegally appropriated assets of the Estate of R. Tartak. Allegedly, he has been unjustly enriched by unwarranted take-over of assets. He is a resident of Puerto Rico. Co-defendants María Cristina Tartak ("María C. Tartak") del Palacio and Dalel Tartak del Palacio (Dalel Tartak) are the nieces of Rafael Tartak. They are citizens of the state of California. They are sister and brother of co-defendant Pedro J. Tartak (Pedro J.). Allegedly, they, María C. Tartak and Dalel Tartak, conspired with their brother, Pedro J., in the illegal appropriation of assets of R. Tartak. Co-defendant Amparo del Palacio is the mother of Pedro J., María C. and Dalel. She ("Amparo Palacio") also co-conspired with her son and daughters to deprive plaintiff Catalina Tartak of her property assets as derived from the estate of R. Tartak. Amparo Palacio is a resident of Puerto Rico.

The court adopts the Factual and Procedural aspects of the case as set forth by Magistrate Judge Bruce McGiverin at Docket No. 39, including the description of the causes of action. For the benefit of the reader, preventing him from the necessary reading of other documents, the court reiterates that section of the Report and Recommendation:

> R. Tartak died without spouse or issue on July 24, 2004. He had been predeceased by his parents and three of his four siblings: Ramon and David, who died childless, and Dalel Tartak Yapur ("Tartak Yapur"). His sister Damia survived him. (Docket No. 1, ¶¶ 7-10). Tartak Yapur, who died on February 28, 1987, had two children with her husband Pedro Tartak Badui ("Tartak Badui"), who died testate on May 3, 1994: plaintiff and her brother, the late Carlos Tartak Tartak ("Carlos"), who is survived by his wife, defendant del Palacio, and their children, defendants P.J. Tartak, D. Tartak, and M.C. Tartak. (Id., ¶¶ 2-5, 11, 34; see also Docket Nos. 10-3, p. 1-15; 23-2, p. 4-29).
> At the time of his death, R. Tartak owned at least twelve real properties, valuable securities, and substantial amounts of cash. (Docket No. 1, ¶ 13). All of the estate properties are located in Puerto Rico. (Docket No. 10, p. 3). R. Tartak and Tartak Badui jointly owned in equal parts two pieces of real property (the "jointly-owned properties"), which host businesses belonging to third parties that pay rent on the properties. In a transfer that plaintiff contests as either a sham assignment or, alternatively, a gift, Tartak

Badui registered his one-half share of the jointly-owned properties in the name of his son Carlos (plaintiff's brother), though he allegedly continued in effect to own his share. Plaintiff has not received any income from the rents defendants receive on the two jointly-owned properties, nor has she received any information about or accounting of that income. (Docket No. 1, ¶¶ 31-32, 37-38). Plaintiff alleges, without any evidence in support, that defendants have admitted that one-half of both properties lawfully belongs to the Tartak Badui estate. (Id., ¶ 33). Plaintiff alleges entitlement to one-half of Tartak Badui's share in the jointly-owned properties, i.e., a one-quarter share in those properties. Alternatively, plaintiff alleges that if the transfer to Carlos was a gift, it must be calculated as part of the Tartak Badui estate. (Id., ¶¶ 35-36).

On October 28, 2004, P.J. Tartak filed an ex parte petition in the Court of First Instance of Puerto Rico, San Juan Part, presenting a copy of a holographic will allegedly signed by R. Tartak on June 15, 2004. The holographic will named Damia and P.J. Tartak as beneficiaries and granted a residence and $200,000 to Damia and the remainder of the estate to P.J. Tartak. (Id., ¶¶ 11-12). Plaintiff alleges that the holographic will is invalid and thus R. Tartak died intestate, such that she is entitled to one-quarter of his estate under Puerto Rico intestate succession law. (Id., ¶¶ 21-25).

On April 9, 2005, Damia, who was allegedly in dire financial straits, assigned all her rights and interest in the R. Tartak estate to P.J. Tartak. In the assignment, she also agreed not to contest the holographic will. In exchange, she received $500,000, a residence, an automobile, monthly pensions of $1,500 and $866 for her lifetime, and additional sums for medical insurance premiums. P.J. Tartak also agreed to pay Damia $38,217.02 "in the concept of redeemed Certificates of Deposit in the name of Dalel Tartak Yapur." (Id., ¶¶ 14a, 14b). Plaintiff alleges that she is entitled to one-half of Tartak Yapur's estate, including the $38,217.02 paid to Damia. (Id., ¶ 26).

Shortly thereafter, on May 19, 2005, plaintiff appeared in the ex parte action, challenging the signature on the holographic will and requesting production of the original of the document for expert analysis. P.J. Tartak then moved for voluntary dismissal of the action, which was entered on September 14, 2005. The following day, he filed suit against plaintiff in the same court, seeking validation of the holographic will. Plaintiff answered the complaint and requested production of the original of the document along with samples of R. Tartak's handwriting and signature in order to ascertain the holographic will's validity. On September 20, 2006, P.J. Tartak requested voluntary dismissal of the action, which was granted one week later. (Id., ¶¶ 15-20).

On April 26, 2007, in the Puerto Rico Court of First Instance, Carolina part, defendants in the instant case sued plaintiff and her husband, Mason Michael, Jr. ("Michael"), in a proceeding concerning the Tartak Badui estate, Case No. FPE 07-0518(407) (the "Carolina case"). Defendants (plaintiffs in that case) accused Michael and Catalina, the executrix at the time, of fraud, lack of account rendering, malfeasance, breach of fiduciary duties, conversion, negligence, self-dealing, and diversion in the execution and administration of the estate over a period of more than fifteen years. (Docket No. 10, p. 1-2). On June 12, 2009, in the Puerto Rico Court of First Instance, San Juan part, P.J. Tartak filed a proceeding concerning the R. Tartak estate, Case No. KJV 09-1324(905) (the "San Juan case"), seeking the protocolization and validation of the holographic will under Puerto Rico probate law. As of the filing of the motion to dismiss, both proceedings were still ongoing,

3

and trial was set for May 25, 2010 in the San Juan case. (Id., p. 1-3; Docket No. 29). Plaintiff filed the complaint in the instant case on July 30, 2009, alleging that P.J. Tartak improperly and fraudulently took over the assets of the R. Tartak estate and that the three other defendants conspired and worked with him to deprive plaintiff of her alleged rights in the R. Tartak and Tartak Badui estates. The complaint, which does not cite any provisions of the Puerto Rico Civil Code, alleges fraud, bad faith, and unjust enrichment and seeks economic and emotional damages as well as equitable relief. Specifically, plaintiff's six requests for relief, styled as causes of action, ask that the court (1) order P.J. Tartak to provide a complete accounting of the R. Tartak estate; (2) order the restitution of all income, monies, properties, and securities to the R. Tartak estate, with interest; (3) appoint a receiver to take possession of, administer, and distribute the R. Tartak estate; (4) grant plaintiff economic and emotional damages for P.J. Tartak's allegedly negligent and fraudulent conduct; and order defendants to (5) restore title to one-half of the jointly-owned properties to the Tartak Badui estate and (6) provide an accounting of the income and benefits derived from the jointly-owned properties and pay plaintiff 25 percent of such income, plus interest. (Id., ¶¶ 3-5, 21-30, 32-36, 38-58, p. 9-10).

It is pellucid from the allegations that the facts in the instant complaint, the estate litigation described in the procedural background and the subject matter of the instant case are closely intertwined with inheritance litigation being conducted in state court as to the estate of decedent R. Tartak and the holographic will which is being challenged by plaintiff Catalina Tartak.

It is, therefore, evident that the probate exception to the existence of apparent diversity jurisdiction is material to the subject matter as well as to the possibility that parallel litigation previously filed in state courts, which potentially brings to the case discretionary abstention as to the existence of parallel state litigation under "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817 (citing Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)).

### I. The Probate Exception

The case of Marshall v. Marshall, 547 U.S. 293 (2006) represents, in the opinion of this court, a significant clarification to the doctrine of probate exception. Although the case of Marshall,

was within the context of a bankruptcy proceeding, the principles enunciated in said case are applicable to the instant case.

The court in Marshall begins by citing Chief Judge Marshall in Cohens v. Virginia 6 Whet 264, 404 (1827) as to the judicial respect of the traditional limits of jurisdiction established by the Constitution: "It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should . . . we have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." Marshall v. Marshall, 547 U.S. at 298-299. Justice Ginsburg reminds the reader that "domestic relations" and "probate" exceptions are akin, as both are "neither compelled by the Constitution or federal statute" but "judicially created doctrines stemming in large measure from . . . English legal history." Marshall v. Marshall, 547 U.S. at 299. Unfortunately, "courts have sometimes lost sight of [Chief Marshall's] . . . admonition and have rendered decisions **expansively** interpreting the two exceptions." (Emphasis ours.)

In Marshall the court emphasized that the bounds of the "domestic relations exception," exception were set in Ankenbrandt v. Richards 504 U.S. 689 (1992) as well as that the "probate exception" were revisited and "curtailed" at Markham v. Allen, 326 U.S. 490 (1946). The certiorari granted in the case of Marshall v. Marshall was precisely caused by an "exceptionally broad" probative exception interpretation by the Ninth Circuit in the Marshall case at 392 F. 3d 1118, 1133 (9th Cir. 2004) and by the interpretation that any "probate related matter" was also to be included within the exception. Id. at 1136.  In that case, defamation claims were filed in a bankruptcy proceeding, as well as tortious interference claims, both of which were related to inheritance litigation matters that the bankruptcy court determined to be "core proceedings under 28 U.S.C. 157," meaning that the bankruptcy had the "authority to enter a final judgment disposing

5

of the claim." Marshall v. Marshall, 547 U.S. at 300. Relying on the Markham precedent the bankruptcy court noted jurisdiction to "adjudicate rights in probate property, so long as its final judgment does not undertake to interfere with the state court's possession of the property." 257 B.R. 35, 38 (Bkrtcy, C.D. Cal. 2000) (citing Markham, 326 U.S. at 494). The Bankruptcy Court followed the precedent that "the probate exception would bar [a] counterclaim only if such jurisdiction would "interfere" with probate proceedings." (Citing Markham, 326 U.S. at 394.) The District Court did not consider the counterclaim a "core matter" and, hence, reviewed the counterclaim under de novo review. The District Court determined that there was a valid cause of action for tortious interference as well as a cause of action involving a conspiracy to suppress or destroy the trust in violation of the rights of another affected party via "backdating, altering or otherwise falsifying documents." Compensatory damages were awarded and findings of "willfulness, maliciousness and fraud" were entered by the District Court to justify the damages. The Court of Appeals of the Ninth Circuit reversed, holding that the probate exception applies to bar jurisdiction if it raises "questions which would ordinarily be decided by a probate court in determining the validity of the decedents estate planning instrument" whether those questions involved "fraud, undue influence, [or] tortious interference with the testator's intent." Further, the Supreme Court, in Marshall, 547 U.S. at 304, cited with approval the Court of Appeals' opinion that "when a state has relegated jurisdiction over probate matters to a special court and the state's trial courts of general jurisdiction do not have jurisdiction to hear probate matters, the federal courts also lack jurisdiction of probate matters." 392 F. 3d at 1136. Moreover, it determined that, should the "Probate court rule [that] it had exclusive jurisdiction over all of Vikies' claims . . . [that] "ruling] would be "binding on the United States District Court." Id. citing Durfee v. Duke, 375 U.S. 106, 115-116 (1963).

6

The Supreme Court first examined the domestic relations exception as clarified in Ankenbrandt v. Richards 504 U.S. 689 (1992). The clarification is not critical for the instant case except that the court emphasized that the domestic exception is to be considered only in "a narrow range of domestic issues" all based on the Judiciary Act of 1789. Id. at 701, hence limited to "divorce, alimony and child custody decrees."[1] Id. at 704. Specifically the holding did not bar a "mother (a citizen of Missouri) on behalf of her daughter to sue their father (former husband) and his female companion [both], citizen of Louisiana" . . . [for] "alleged sexual and physical abuse . . . predicated on diversity citizenship."

The court in Marshall stressed that, in the past, "probate exception" was examined by the Supreme Court "akin to the 'domestic . . . relations' exception, to otherwise domestic relations." (citations omitted.) Like the domestic relations exception the probate exception has been linked "to the Judiciary Act of 1789."

Citing Markham v. Allen, 326 U.S. at 494, the court reiterated two principles:

(A)  "It is true that a federal court has no jurisdiction to probate a will or administer a estate . . . But it has been established by a long series of decisions of this court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs and other claimants against a decedent's estate' to establish their claims 'so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." 326 U.S. at 494.

The second passage quoted in Marshall, 547 U.S. at 310 from Markham v. Allen, 326 U.S. 490 is as follows:

"[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court,. . .it may exercise its jurisdiction to adjudicate

---

[1] The court further noted that the Barber Court [referring to Barber v. Barber, 21 HOW 582 (1859)] had specifically "sanctioned the exercise of federal jurisdiction over the enforcement of an alimony decree that had been properly obtained in a state court of competent jurisdiction." Ankenbrandt v. Richards 504 U.S. at 702.

7

rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." 326 U.S. at 494.

The first quoted passage was clarified in Marshall, 547 U.S. at 311, to define the meaning of "interfere with probate proceedings." The court in Marshall stated that "[w]e read Markham enigmatic words in sync with the second above quoted passage to proscribe disturbing or affecting the possession in the custody of a state court." Marshall, 547 U.S. at 311 quoting Markham at 326 U.S. 494. "In short, we comprehend the "interference" language in Markham as essentially a reiteration of the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res. (Citations omitted.) Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Marshall, 547 U.S. at 311-313.

The dispositive sections of the Marshall decision further illustrate the general rules set forth above.

(1) Claims that do not "involve the administration of a estate, the probate of a will or any probate matter" may proceed in federal court. Marshall, 547 U.S. at 312 (citing as correct the Ninth Circuit Court of Appeals, 392 F. 3d 1133).

(2) "Widely recognized [intentional] pure tort actions such as "fraud, duress or other means intentionally prevents another from receiving from a third person an inheritance or gift that [had been] received is subject to liability to others for loss of the inheritance or gift" is not barred under the probate exception.Id.

8

(3) "In personam judgments" against other inheritors are not barred by the probate exception. Id.

(4) Suits to annul a will are barred. Id.

(5) A res subject to probate is barred from being in any manner carved or taken away from the jurisdiction of the state court. Id.

As to the matter of exclusive jurisdiction of probate matter to a specific court within a state rather than courts of general jurisdiction, thereby binding in the United States District Court, the matter is not applicable in the instant case as in Puerto Rico there is no exclusive court to handle the matter. Thus, the probate is assigned to the Superior Court family relations section courts which are administratively designated by the Chief Judge. The Superior Court is the court of "general jurisdiction" of Puerto Rico except as to the handling of certain claims that may not have reached a threshold quantity amount. The Superior Court does not constitute an exclusive jurisdiction court to see only probate matters.[2] Further, in the Marshall case, the Supreme Court determined that the decision rendered in Durfee v. Duke, 375 U.S. at 115-116, "stands only for the proposition that a state court's final judgment determining its own jurisdiction ordinarily qualifies for full faith and credit, so long as the jurisdictional issue was fully and fairly litigated in the court that rendered the judgment." However, no state litigation has reached "final judgment" staus here; thus, the Durfee v. Duke holding at 375 U.S. 115-116 is not applicable.

The court also recognizes that "[w]here exercise of federal jurisdiction will result in a

---

[2] To the contrary, the Superior Court of Puerto Rico, is a court of First Instance, constitutes a court of "general jurisdiction". See 4 LPRA § 25(a); 25( c) (the municipal court is also a court of "general jurisdiction" but has been limited within its general jurisdiction to certain matters at 4 LPRA 25(d)). There are no limits set to the "general jurisdiction of the Superior Court."

judgment that does not dispose of property in the custody of a state court, even though the judgment may be intertwined with and finding on those state proceedings, the federal courts retain jurisdiction." Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 24 (1st Cir. 2010) (citing Lefkowitz v. Bank of N.Y., 528 F. 3d 102, 106 (2nd Cir. 2007).

However, the principles of probate are not the only issues that are relevant to the case at hand as there are also potential issues as to discretionary abstention under prior parallel state litigation which may have applicable directives to be reviewed.

## II. Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976); Moses H. Cone Memorial Hosp. V. Mercury Const. Corp., 460 U.S. 1 (1983)

These two cases set forth a discretionary abstention doctrine for federal litigation in which the three long standing traditional abstention doctrines do not apply.[3] This alternative abstention doctrine focuses not on considerations of state-federal comity or an avoidance of resolving constitutional decisions as in traditional abstention doctrines, but rather on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817. General principles of abstention generally state that is that "abstention is the exception and not the general rule . . . [it constitutes] extraordinary and narrow exception. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional

---

[3] Pulman abstention under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496; 61 S. Ct. 643 (1941) (where a federal court can avoid a constitutional determination by allowing a state to interpret a law or its own constitution) ; Burford Abstention  abstention under Burford v. Sun Oil Company, 319 U.S. 315 (1943) (where a case involves difficult questions of state law whose importance transcends the results of the case at bar); Younger Abstention under Younger v. Harris, 401 U.S. 37; 91 St. 746 (1971) (where federal jurisdiction has been invoked for the purpose of impedingrestraining state criminal or administrative proceedings).

circumstances where the order to the parties . . . would clearly serve an important countervailing interest." Colorado River, 424 U.S. at 813 citing Allegheny County v. Frank Mashuda Co., 360 U.S. 185 (1959). Further, "[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a state court could entertain it." Colorado River Water, 424 U.S. at 813-814 citing Alabama Public Service Commission v. Southern Ry. Co., 341 U.S. 341, 361 (1951).

From Colorado River and its progeny, six factors have emerged as the core of this brand of jurisdictional analysis. To determine whether the required "exceptional circumstances" exist, a district court must consider: (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction, see Colorado River, 424 U.S. at 813, 96 S. Ct. at 1244; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties, see Moses H. Cone, 460 U.S. at 25-26. The list, however, was not intended to be exhaustive. Villa Marina Yacht Sales v. Hatteras Yachts ("Villa Marina I"), 915 F.2d 7, 16 (1st Cir. 1990). Other factors have been found to merit consideration, notably the vexatious or contrived nature of the federal claim, see Id. at 12; Fuller Co. v. Ramon I, Gil, Inc., 782 F.2d 306, 309-10 (1st Cir. 1986), as well as respect for the principles underlying removal jurisdiction, see Villa Marina, supra, at 14-15. Moreover, "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against the exercise is required." Id. at 12.

The court must apply a two-part test. First, the court must determine whether the actions in the state and federal forums are parallel. The proceedings are considered to be

11

parallel if they involve the same parties and "substantially identical claims," raising "nearly identical allegations and issues." Second, the District Court must make a balancing of interest considering a number of factors in order to determine whether there exist "exceptional circumstances" to justify abstention. See Timoney v. Upper Merion Twp., 66 Fed. Appx. 403 (3d Cir. 2003).

The party urging the court to abstain bears the heavy burden of proving some exceptional circumstance to justify abstention. Paul Revere Variable Annuity Ins. Co. v. Thomas, 66 F. Supp. 2d 217, 221. (D. Mass. 1999).

### III. Standard of Review

The district court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation.  28 U.S.C. § 636(b)(1)(B); Rule 72(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."); Local Civil Rule 72(a) of the Local Rules of the United States District Court for the District of Puerto Rico ("L.Civ.R.").  See Mathews v. Weber, 423 U.S. 261 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within fourteen (14) days or any other applicable term granted, after being served a copy thereof.  See Local Rule 72(d). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made**.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

However, "[a]bsent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." Templeman v. Chris Craft Corp., 770 F. 2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court, and those claims not preserved by such objections are precluded on appeal." Davet v. Maccarone, 973 F. 2d 22, 30-31 (1st Cir. 1992). *See also* Sands v. Ridefilm Corp., 212 F.3d 657, 663 (1st Cir. 2000); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); Lewry v. Town of Standish, 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate [judge]'s report preserves only those objections that are specified"); Keating v. Secretary of H.H.S., 848 F.2d 271, 275 (1st Cir. 1988); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an argument never raised"). *See also* United States v. Valencia, 792 F.2d 4, 6 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir.1980). Hence, the standard for review of an objected report and recommendation is *de novo* review of those matters properly objected. *See* Borden v. Secretary of H.H.S., 836 F.2d at 6. Therefore, as the Report and Recommendation has been objected to, the court proceeds to review the Report and Recommendation of the Magistrate Judge de novo, as to those parts that have been objected. Borden v. Secretary of H.H.S., supra.

### IV. The Standard Under Fed. R. Civ. P. 12(b)(1)

The court adopts the standard expressed by the Magistrate Judge as the subject matter

challenge herein could potentially be one that is facial or factual in nature. Valentín v. Hosp. Bella Vista, 254 F. 3d 358, 363 (1st Cir. 2001). Notwithstanding general principles of lack of subject matter also generally apply. Where subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating subject matter jurisdiction. Skwira v. U.S., 344 F. 3d 64, 71 (1st Cir. 2003). Thus, plaintiffs must demonstrate jurisdiction. Padilla-Mangual v. Pavia Hosp., 516 F. 3d 29, 31 (1st Cir. 2008).

In the instant case plaintiff has prima facie established diversity. As defendants are claiming the exception of either probate or Colorado River abstention, the court understands that it is defendant who has the burden to prove the exception.

As stated before, the court adopts the standard expressed by the Magistrate Judge as to a potential facial and/or factual challenge. For the purposes of brevity the court repeats the standard as to a facial or factual challenge as well expressed by the Magistrate Judge.

> Challenges to subject matter jurisdiction through a Rule 12(b)(1) motion may constitute either a facial or a factual challenge. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001); Mercado-Arocho v. United States, 455 F. Supp. 2d 15, 18 (D.P.R. 2006); Rivera de León v. Maxon Eng'g Servs., Inc., 283 F. Supp. 2d 550, 554 (D.P.R. 2003). To decide whether a 12(b)(1) motion is a facial or factual challenge, a court must determine whether the motion disputes the complaint's allegations regarding subject matter jurisdiction. Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162 n.8 (1st Cir. 2007). If the 12(b)(1) motion does not dispute subject matter allegations, then it challenges only the facial sufficiency of the complaint. Id. If the 12(b)(1) motion disputes the subject matter allegations, then it challenges the factual basis for subject matter jurisdiction. Id.
>
> Under a facial challenge, the moving party challenges jurisdiction based on the allegations in the complaint. See Valentin, 254 F.3d at 363; Mercado-Arocho, 455 F. Supp. 2d at 18; Rivera de León, 283 F. Supp. 2d at 554. Thus, "the court must consider all the allegations in the complaint as true, and will not look beyond the face of the complaint to determine jurisdiction." Mercado-Arocho, 455 F.

> Supp. 2d at 18. A facial attack only requires a court to examine the complaint and determine whether the plaintiff "'has sufficiently alleged a basis of subject matter jurisdiction.'" Torres-Negrón, 504 F.3d at 162 (quoting Scarfo v. Ginsburg, 175 F.3d 957, 960 (11th Cir. 1999)); see, e.g., Fina Air Inc., 555 F. Supp. 2d at 325-28 (examining a facial attack and applying the standard articulated in Torres-Negrón).
>
> In a factual challenge, the moving party "challeng[es] the actual existence of subject matter jurisdiction" where, "either in his motion or in any supporting materials, [he] denies or controverts the pleader's allegations of jurisdiction." 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1363, at 653-54 (1969) (cited in Torres-Negrón, 504 F.3d at 162 n.8). Under a factual challenge, "the allegations have no presumptive truthfulness, and . . . the court has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Mercado-Arocho, 455 F. Supp. 2d at 18 (citations omitted). The analysis changes depending on whether the challenged facts would also decide issues relating to the merits of the case. Torres-Negrón, 504 F.3d at 163. If the challenged facts do involve the merits of the case, the court must use a summary judgment standard and dismiss "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Id. (quoting Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)). If the challenged facts do not involve the merits, then the court is free to consider evidence and decide the question of its subject matter jurisdiction over the case. Id.

(Docket No. 39, p. 4-6).

## V. The Magistrate Judge's Report and Recommendation

The Magistrate Judge analyzed the probate exception and the Colorado River abstention comprehensively, carefully, and exhaustively, on a claim by claim basis in his Report and Recommendation.

The Magistrate Judge concluded that the probate exception did not apply to causes of action number one, the accounting of the estate, and two, the restitution of all income, monies and property, in general the enlargement of the estate.   The third request is the appointment of a receiver to the Estate of R. Tartak account. The Magistrate Judge easily concluded that the

15

second claim did not fall within the probable exception as that claim involved assets not at the moment within the custodial control of the court, constituting an "enlargement" of the estate, citing Rodríguez-Pagán, 597 F. 3d at 24 ("enlargements" of the estate "not yet in custody" are not barred by the probate exception). See also, Gustafson v. zumBrunnen, 546 F.3d 398, 400 (7th Cir. 2008). A "judgment sought [that] would just add to the assets to the decedent's estate" would not fall within the probate exception as opposed to "relocating the estate assets among contending claimants or otherwise interfer[ing] with the probate courts control over administration."

As to the first claim, the Magistrate Judge concluded that the request was merely one of equitable relief, outside the probate exception citing Garcia v. Garcia Oronce, 2009 WL 483127, at *4 (D.P.R. Feb. 24, 2009) (citing Marshal, 547 U.S. at 311-312); Marcus v. Quattrocchi, 2010 WL 2228489, at *8 (S.D.N.Y. May 27, 2010). This court considers this matter close as an accounting of a estate could very well constitute an act of "administration" within the scope of the administration of decedent's estate. Marshal, 547 U.S. at 311-312.

As to the third cause of action, the appointment of a receiver, the Magistrate Judge concluded that the matter clearly falls within the bounds of Marshall, 547 U.S. at 311 as the probate exception "reserves to the state probate courts . . . the administration of decedent's estate "as is the appointment of a receiver."

Hence, the Magistrate Judge concluded that "of the three claims related to the Estate of R. Tartak, only the third must be dismissed for lack of subject matter jurisdiction due to the probate exception." (Docket No. 39, p. 8).

Plaintiff objected to the probate conclusions of the Magistrate Judge at Docket No. 41. As to the second and third causes of action, the second and third were dismissed due to Colorado River abstention. The Court shall discuss the Colorado River results infra. The third cause of

action had been dismissed due to the probate exception as the third cause of action sought appointment of a receiver, a traditional probate function. The Court will not alter the judgment of the Magistrate Judge as to considering the appointment of a receiver within the exception of probate as part of "the administration of the decedent's estate." Marshall 547 U.S. 311. Defendant logically did not object to the Magistrate Judge's determination. (Docket No. 43).

As to the first claim, the accounting request to the estate and to be made by Pedro J., although the matter is close as whether it constitutes an administrative function within the probate, the majority of the relevant jurisprudence holds this request to constitute an equitable relief outside the scope of the probate exception. Wisecarver v. Moore, 489 F.3d 487 (6th Cir.2007); Taylor v. Feinburg, 2009 W.L. 315674 at *4 (N.D.Ill.2009) (citing Great West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002)("equitable accounting does not seek any particular res or fund money")); Garcia v. Garcia Oronce, 2009 WL 483127 at *4 (D.P.R.2009)(citing Marshall, 547 U.S. at 311-12)); Marcus v. Quattrocchi, 2010 WL 2228489 at *8 (S.D.N.Y.2010). The court has examined the request as drafted in the complaint and the same is couched on equitable principles. (Docket No. 1, ¶39-41) The request of accounting of all assets, operations, transactions and liabilities of the estate of R. Tartak since his death on July 24, 2001 until the date of accounting to be performed by Pedro J. sounds in equity, however. However, the Magistrate Judge determined to apply Colorado River / Moses H. Cone principles of discretionary abstention due to exceptional circumstances as to parallel prior state litigation.[4]

---

[4] The Magistrate Judge as to these causes of action, the first three, determined notwithstanding that the probate determination enjoyed a clear outcome in all three causes of action, to recommend dismissal since the remedy claimed by plaintiff depended entirely on **a copy of a holographic will** which constituted a novel question under local law:

> Here, plaintiff's first three causes of action turn on whether or not R. Tartak's alleged holographic will can be validated under Puerto Rico law. Plaintiff's case is predicated on her theory that the will

17

The Magistrate Judge concluded that the fourth cause of action (Docket No. 1, ¶ 49-52), which is a classic personal damages claim based on "negligence, unjust enrichment and fraud" was not covered under the probate exception as a classic personal damages claim, a "widely recognized tort . . . which [sought] an in personam judgment . . . , not the probate or annulment of a will" or "to reach a res in custody of the state" is not probate-barred under Marshall, 547 U.S. 312. (Docket 39, p. 8).  The Court agrees and is not inclined to alter the legal conclusion.  This cause of action, as well as the fifth and sixth causes of action, survived under the Report and Recommendation of the Magistrate Judge an abstention challenge under Colorado River / Moses H. Cone.

However, in Defendants' objections as to the fourth, fifth and sixth causes of action, Defendants disagree as to the conclusion that these claims raise matters outside the probate exception, but primarily base their objections on allegedly erroneous facts which the Magistrate Judge determined.  (See e.g. Docket 43)(new facts are added, documents were attached, some causes of action are allegedly procedurally barred as they constitute a compulsory counterclaim

---

is not valid and R. Tartak died intestate. The first cause of action seeks an accounting of the estate, but if the will is valid, plaintiff would have no rights in the R. Tartak estate and thus would be entitled to no such accounting. Likewise, the second cause of action seeks restitution of assets to the R. Tartak estate, but this relief is unavailable if the holographic will is valid. Plaintiff's third claim asks that a receiver be appointed to take over administration and distribution of the estate. If this court proceeds under intestacy law but the Commonwealth court validates the holographic will, the practical implications would involve divergent and conflicting consequences as between the two cases, since the estate would require a different distribution of assets to different heirs depending on whether R. Tartak is adjudged to have died testate or intestate. Moreover, defendants claim (though without citation to any legal authority) that the validity of a copy of a holographic will whose original has been lost is a novel question of Puerto Rico law. These circumstances merit dismissing plaintiff's first three causes of action in favor of the San Juan case.

The court reserves judgment on the remedy of whether the matter shall remain as judged by the Magistrate Judge or whether another dispositive solution is more appropriate including but not limited to a "stay" of the three causes of action pending the determination of the validity of a copy of a holographic will under Puerto Rican Law by the local court.

within the state court actions). Defendant therefore challenges the factual determinations of the Magistrate Judge and also provided new facts and showed prima facie contradictory facts entered by the Magistrate Judge.

The final outcome, according to Defendant, is that the Colorado River / Moses H.Cone abstention conclusion must be altered in their favor. That is to say that the Court must abstain as to the fourth, fifth and sixth causes of action. Because new facts are added and/or contradictory facts are alleged, the Court must therefore hold a hearing on the matter. The Court does not hint at any final result. It may very well be that the Court retains jurisdiction over these claims and the facts merely potentially clarify the substantive causes of action and not the analysis under Colorado River / Moses H. Cone. Defendant insists, however, that the facts in error within the Report and Recommendation as concluded by the Magistrate Judge and/or the new facts submitted justify a totally different Colorado River abstention outcome.

The Court orders Plaintiff to arrange the alleged facts in error and/or the new facts on a claim by claim basis as to the causes of action numbered four, five and six and any other cause of action that is being challenged. The Court will consider the matter on a reconsideration basis as the Court deems that the recommendation of the Magistrate Judge as to the Colorado River abstention and causes of action four, five and six is sound, well analyzed and prima facie correct as to its ultimate legal conclusion, that is that they survive the Colorado River abstention challenge. Causes of action one, two and three determinations are also sound as to either dismissal without prejudice or a potential stay pending a determination of a copy of a holographic will under Puerto Rican Law.

Hence, all motions regarding Docket No. 10 are to be closed by a Deputy Clerk.

Plaintiff's motion for reconsideration (Docket No. 56) becomes moot as Plaintiff will have

an opportunity to answer Defendants' rearranged objections to the Report and Recommendation on a claim by claim basis and hence Plaintiff will have the opportunity to address issues which may have been left "in the inkbottle" motivating Plaintiff's original reconsideration.

Defendants are to file its amended objections by November 2, 2010. Plaintiff is to answer by December 2, 2010. No extensions of time shall be granted. Neither submission shall exceed twenty five (25) pages, excluding attachments. The Court wishes to meet with parties to verify exactly which causes of action will be challenged by each party after the Court's affirmation of the Magistrate Judge's Report and Recommendation. Thus, a Status Conference is hereby set for October 20, 2010 at 6:00 PM.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of October, 2010.

/S/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge